## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kathleen Mills, et al., | Case No. 19-cv-2859 (SRN/ECW) |
| Plaintiffs, | |
| v. | **ORDER** |
| Mayo Clinic, et al., | |
| Defendants. | |

Michael Kemp, Hansen Dordell, 3900 Northwoods Drive, Suite 250, St. Paul, MN 55112, for Plaintiffs.

Gregory E. Karpenko and John Pavelko, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402; Matthew J. Hanzel, Mayo Clinic Legal Department, 200 First Street Southwest, Rochester, MN 55905, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 24] filed by Defendants Mayo Clinic and Dr. Scott Kelley, and the Motion for Extension of Time to Serve Expert Report [Doc. No. 30] filed by Plaintiffs Kathleen Mills and Wilson Mills. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** the Motion to Dismiss and **GRANTS** the Motion for Extension of Time to Serve Expert Report.

## I.    BACKGROUND

The Complaint alleges that, on November 7, 2015, Kathleen Mills sought medical treatment at Mayo Clinic's emergency room in Red Wing, Minnesota. (Compl. [Doc. No.

3], at ¶ 10.) Mills was then transferred to Mayo Clinic's Rochester, Minnesota location and received medical care there from Dr. Scott Kelley, but her condition allegedly worsened over the following weeks. (*Id.* ¶¶ 11-17.) As a result, Dr. Kelley performed surgery, and Mills experienced complications requiring hospital stays and rehabilitation. (*Id.* ¶¶ 16-17.) Mills received additional surgical care from Dr. Kelley at Mayo Clinic on multiple occasions in 2016. (*Id.* ¶¶ 18-20.) Mills alleges that Dr. Kelley's substandard medical care has caused her to suffer significant injuries, including repeated hospitalizations, additional surgeries, disfigurement, and mental and emotional distress. (*Id.* ¶ 23.) In addition, her husband, Wilson Mills, claims that Dr. Kelley's substandard medical care has injured him through the loss of consortium. (*Id.* ¶ 24.)

Plaintiffs brought this action against both the Mayo Clinic and Dr. Kelley. Plaintiffs allege that Defendants were negligent in failing to appropriately and timely diagnose and treat Kathleen Mills's condition. (*Id.* ¶¶ 25-28.) In addition, Plaintiffs allege that an implied contract existed between the parties, which required Defendants to perform a higher level of medical care upon Kathleen Mills's transfer to Dr. Kelley, and that Defendants failed to timely perform that care. (*Id.* ¶¶ 32-37.) Thus, the Complaint alleges both a medical malpractice claim and a breach-of-implied-contract claim against Defendants.

Defendants now move to dismiss, arguing that Plaintiffs did not timely serve an expert affidavit as required by Minnesota Statutes § 145.682, Subdivision 2(2). Under § 145.682, medical malpractice plaintiffs are required to serve an expert affidavit meeting certain statutory criteria "within 180 days after commencement of discovery." Minn. Stat. § 145.682, Subd. 2(2). Here, the statutory deadline was originally September 17, 2020. The

Court extended the deadline, per the parties' stipulation, to November 12, 2020. (Am. Scheduling Order [Doc. No. 22].) Plaintiffs' counsel avers that the stipulation was based on a need to depose Dr. Kelley and give Plaintiffs' expert time to review the deposition transcript. (Kemp Decl. [Doc. No. 32], ¶ 4.) Ultimately, Dr. Kelley was not deposed until October 22, 2020. (*Id.* ¶ 6.)

In the week prior to the November 12 deadline, several attorneys and legal assistants at Plaintiffs' counsel's firm tested positive for COVID-19. (*Id.* ¶ 7.) As a result, the firm experienced "a sudden breakdown in administration." (*Id.*) On the morning of November 12, Plaintiffs' counsel emailed Defendants' counsel, stating that he had not yet received the transcript of Dr. Kelley's deposition. (*Id.* ¶ 8.) Defendants' counsel provided an electronic copy. (*Id.*) However, Plaintiffs' counsel did not explicitly ask for an extension of the deadline, nor did Defendants' counsel indicate an intent to move for dismissal under § 145.682. (*Id.*, Ex. B.) Despite the lack of the transcript, the expert report was purportedly "substantially complete" and could have been served (albeit without a review of the deposition transcript) on November 12. (*Id.* ¶ 9.) Defendants moved to dismiss on November 16, Plaintiffs served the expert report on November 20, and Plaintiffs moved for an extension of time to serve on December 1.

## II.   DISCUSSION

The issue before the Court is whether Plaintiffs' eight-day delay in furnishing the expert report requires dismissal of this lawsuit. Section 145.682 provides that the failure to serve the required affidavit "results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie

case." Minn. Stat. § 145.682, Subd. 6(b). Although the statute's text states that dismissal is "mandatory," the Minnesota Supreme Court has held that the time limits imposed by the statute "may be extended, even after the time limits have expired, . . . upon a showing of excusable neglect." *Stern v. Dill*, 442 N.W.2d 322, 324 (Minn. 1989). "Excusable neglect exists where the plaintiff (1) has a reasonable suit on the merits, (2) has a reasonable excuse for failure to comply with [the] time limit set forth by Minn. Stat. § 145.682, subd. 2, (3) acted with due diligence after receiving notice of the time limit, and (4) no substantial prejudice results to the defendant." *Anderson v. Rengachary*, 608 N.W.2d 843, 850 (Minn. 2000).

The Court finds that the failure to timely serve the expert report was attributable to excusable neglect. The COVID-19 outbreak at Plaintiffs' counsel's law firm, which resulted in "a sudden breakdown in administration," furnishes a "reasonable excuse" for the failure to comply with the statute. (Kemp Decl. ¶ 7.) And although Plaintiffs' counsel could have expressly requested an extension in his email to Defendants' counsel, counsel's email on the morning of November 12 and subsequent serving of the report on November 20 constitute "due diligence" in attempting to meet the statutory deadline in the wake of the COVID-19 outbreak. Finally, Defendants have not asserted any prejudice as a result of the delay. Accordingly, the Court finds good cause to extend § 145.682's deadline.

Therefore, the Court denies Defendants' Motion to Dismiss and grants Plaintiffs' Motion for Extension of Time to Serve Expert Report.

## III.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Doc. No. 24] is **DENIED**, and Plaintiffs' Motion for Extension of Time to Serve Expert Report [Doc. No. 30] is **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 11, 2020                    s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge